UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
IZAAK WALTON LEAGUE OF
AMERICA, et al.,

              Plaintiffs,

         v.                          Civil Action
                                     No. 04-694
STEPHEN L. JOHNSON,
Administrator, United States
Environmental Protection Agency,
et al.,
              Defendants.
```

**MEMORANDUM OPINION**

Plaintiffs, the Izaak Walton League of America, the National Wildlife Federation, and the Natural Resources Council of Maine (collectively "Plaintiffs"), petition this court to order the Administrator of the Environmental Protection Agency ("Administrator" or "EPA") to perform his nondiscretionary duty to promulgate emission standards for coal- and oil-fired electric utility steam generating units ("EUSGUs") under the Clean Air Act, 42 U.S.C. § 7412(c) (2000) ("CAA"). While this matter was pending, the EPA took action which it claims mooted the Plaintiffs' cause of action. Accordingly, the EPA has moved to dismiss the Plaintiffs' action as moot. Before the court are the EPA's motion to dismiss, and the parties' cross-motions for summary judgment. Because the

No. 04-694                                                        Page 2

court agrees with the EPA that its action has rendered the exercise of jurisdiction by this court improper, the court **grants** Defendant's motion to dismiss.

## BACKGROUND
### A.

The CAA, 42 U.S.C. §§ 7401-9471q, enacted in 1970, establishes a comprehensive scheme to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare." 42 U.S.C. § 7401(b)(1). In 1990, Congress amended the CAA to authorize the EPA to regulate hazardous air pollutants, as defined under 42 U.S.C. §§ 7412(b)(1)&(2), emitted from "all categories and subcategories of major sources and area sources," 42 U.S.C. §§ 7412(c). The 1990 amendments required the EPA to publish an initial list of source categories no later than November 15, 1991 and to periodically revise the list. Id. Additionally, Section 7412(c) permits the EPA to list additional categories and subcategories of hazardous air pollutants not included on the initial list, see 42 U.S.C. § 7412(c)(5), and to delete sources from the list upon certain findings, 42 U.S.C. § 7412(c)(9).[1] If

---

[1] Title 42 Section 7412(c)(9) provides in relevant part:

Deletions from the list.
              *           *           *
    (B) The Administrator may delete any source category from the list under this subsection, on petition of any person or on the Administrator's own motion, whenever the Administrator makes the following determination or determinations, as applicable:
        (i) In the case of hazardous air pollutants emitted by

No. 04-694                                                        Page 3

a source is listed, the CAA requires the EPA to "establish emission standards" not later than "10 years after November 15, 1990, or within 2 years after the date on which such category or subcategory is listed, whichever is later," 42 U.S.C. § 7412(c)(5); see also 42 U.S.C. § 7412(c)(2).

The CAA also includes a specific provision regarding EUSGUs. See 42 U.S.C. § 7412(n). Under Section 7412(n), the EPA was required to "perform a study on the hazards to public health reasonably anticipated to occur as a result of emission" of hazardous air pollutants emitted by EUSGUs and to report the study's results to Congress no later than November 15, 1993. Id. Section 7412(n) further authorizes the EPA to "regulate electric utility steam generating units under this section, if the Administrator finds such regulation is appropriate and necessary after considering the results of the study required by this subparagraph." Id.

---

sources in the category that may result in cancer in humans, a determination that no source in the category (or group of sources in the case of area sources) emits such hazardous air pollutants in quantities which may cause a lifetime risk of cancer greater than one in one million to the individual in the population who is most exposed to emissions of such pollutants from the source (or group of sources in the case of area sources).
          (ii) In the case of hazardous air pollutants that may result in adverse health effects in humans other than cancer or adverse environmental effects, a determination that emissions from no source in the category or subcategory concerned (or group of sources in the case of area sources) exceed a level which is adequate to protect public health with an ample margin of safety.

No. 04-694 Page 4

**B.**

In February 1998, the EPA completed its study of EUSGUs and submitted a report to Congress as required under 42 U.S.C. § 7412(n). Subsequently, on December 20, 2000, the EPA made a finding under Section 7412(n) that regulation of EUSGUs was "appropriate and necessary." *Regulatory Finding on the Emissions of Hazardous Air Pollutants From Electric Utility Steam Generating Units*, 65 Fed. Reg. 79,825, 79,829 (EPA Dec. 20, 2000) (notice of regulatory finding). Concurrent with this assessment, the EPA added EUSGUs as a source category to the list described in Section 7412(c) ("source category list"). *Id.* at 79,831. Despite listing EUSGUs as a source category, the EPA never promulgated emission standards for EUSGUs as required under Section 7412(c)(5).

On January 30, 2004, the EPA issued a proposed rule that presented two primary alternative regulatory approaches for EUSGUs: (1) to delete EUSGUs from its list compiled under Section 7412(c) or (2) to promulgate emission standards for EUSGUs, *Proposed National Emission Standards for Hazardous Air Pollutants; and, in the Alternative, Proposed Standards of Performance for New and Existing Stationary Sources: Electric Utility Steam Generating Units*, 69 Fed. Reg. 4,652, 4,668 (EPA Jan. 30, 2004) (proposed rule) ("*Proposal*"), expressing its preference for the former course of action. *Id.* After a comment period, (then Acting) EPA Administrator Stephen L. Johnson signed a notice of agency action

No. 04-694                                                        Page 5

removing EUSGUs from the source category list on March 15, 2005. <u>Revision of December 2000 Regulatory Finding on the Emissions of Hazardous Air Pollutants From Electric Utility Steam Generating Units and the Removal of Coal- and Oil-Fired Electric Utility Steam Generating Units From the Section 112(c) List</u>, 70 Fed. Reg. 15,994 (EPA March 29, 2005) ("<u>Delistment Decision</u>") <u>amended by</u>, <u>Revision of December 2000 Regulatory Finding on the Emissions of Hazardous Air Pollutants From Electric Utility Steam Generating Units and the Removal of Coal- and Oil-Fired Electric Utility Steam Generating Units From the Section 112(c) List</u>, 70 Fed. Reg. 33,000 (EPA June 7, 2005) (final rule; correction). In its official notice in the Federal Register, the EPA noted that "[p]ursuant to CAA section 307(b), judicial review of this final rule is available only by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit by May 31, 2005. EPA designates this action a CAA section 307(d) rulemaking." <u>Id.</u> at 15,994.

## C.

Plaintiffs filed a complaint in this court on April 28, 2004. Compl. at 15. Plaintiffs claimed that because the EPA had listed EUSGUs as a source category on December 20, 2000, the EPA had a nondiscretionary duty to promulgate emission standards by December 20, 2002, which the EPA had failed to honor. Plaintiffs therefore asked this court to order the promulgation of such emission

No. 04-694                                                        Page 6

standards.

   Plaintiffs and Defendant filed cross-motions for summary judgment.  Following the conclusion of briefing, but before the court issued a decision pertaining thereto, the EPA announced its action to delist EUSGUs.  The next day, the EPA supplemented its filings with a motion to dismiss the Plaintiffs' complaint as moot under Rule 12(b)(1).

### DISCUSSION

   It is an imperative of Article III of the U.S. Constitution that every case initiated before the federal judiciary must be, and remain, a "case" or "controversy."  See Church of Scientology of Cal. v. United States, 506 U.S. 9, 12-13 (1992), Lewis v. Continental Bank Corp., 494 U.S. 472, 447-48 (1990).  Therefore, if during the pendency of proceedings before the court, "intervening events make it impossible to grant the prevailing party effective relief," the court may no longer decide the questions presented, but rather, must dismiss the action as moot.  Burlington N. R.R. Co. v. Surface Transp. Bd., 75 F.3d 685, 688 (D.C. Cir. 1996).  In determining whether a question has been mooted by intervening events, the court must look to both the relief sought, and the court's ability to grant such requested relief.  Cf. Adeleke v. United States, 355 F.3d 144, 151 (2d Cir. 2004); United States v. Martinson, 809 F.2d 1364, 1368 (9th Cir. 1987) ("So long as the court may order relief responsive to the wrong alleged, the appeal

No. 04-694                                                                Page 7

is not moot."); see also Tuck v. Pan Am. Health Org., 668 F.2d 547, 549 (D.C. Cir. 1981) ("The federal courts are courts of limited jurisdiction, and they lack the power to presume the existence of jurisdiction in order to dispose of a case on any other grounds.").

In this case, the metes and bounds of this court's ability to grant relief are defined and limited by the CAA. The CAA trifurcates review of EPA actions or duties among various federal courts. First, Congress permits "citizen suits to compel the EPA to perform nondiscretionary acts or duties" in the district courts. 42 U.S.C. § 7604(a)(2); see Massachusetts v. EPA, 415 F.3d 50, 53 (D.C. Cir. 2005), Sierra Club v. Thomas, 828 F.2d 783, 787-92 (D.C. Cir. 1987). Second, the CAA grants jurisdiction to the courts of appeals for any EPA final action "which is locally or regionally applicable." 42 U.S.C. § 7604(b)(1); see Ind. & Mich. Elec. Co. v. EPA, 733 F.2d 489, 490-91 (7th Cir. 1984). Third, the CAA creates exclusive jurisdiction in the Court of Appeals for the District of Columbia over "nationally applicable regulations promulgated, or final action taken, by the [EPA.]" 42 U.S.C. § 7607(b)(1) (emphasis added); see Massachusetts, 415 F.3d at 53. Furthermore, 42 U.S.C. § 7607(e) provides that "[n]othing in this [Act] shall be construed to authorize judicial review of regulations or orders of the Administrator under this [Act] except as provided in [42 U.S.C. § 7607 (which authorizes review by the courts of appeals)]."). Accordingly, by virtue of this statutory structure, this court may

not review "regulations or orders" and "final actions" taken by the EPA, and, by consequence, may not invalidate a "regulation or order" or other "final action" of the EPA.

In this case, Plaintiffs are asking this court to order the EPA to perform a nondiscretionary act or duty, invoking the court's jurisdiction under 42 U.S.C. § 7604(a)(2). Under Plaintiffs' theory, the listing of a source category triggers a nondiscretionary duty to promulgate emission standards for EUSGUs within two years of the listing. However, if the EPA lawfully has delisted EUSGUs from the source categories list on March 15, 2005, the EPA's nondiscretionary duty to promulgate emission standards has ceased. Because the claim of a nondiscretionary duty is a condition predicate to this court's jurisdiction, and specifically to Plaintiffs' claim for relief, Plaintiffs' cause of action has been extinguished before this court. See Sierra Club v. Browner, 130 F. Supp. 2d 78, 82-83 (D.D.C. 2001).

Nevertheless, Plaintiffs aver that the EPA impermissibly delisted EUSGUs by failing to follow the prescribed procedure for delisting source categories under 42 U.S.C. § 7412(d)(1)(C); but cf. 42 U.S.C. § 7607(d)(1)(c). As such, according to Plaintiffs, the EPA's decision to delist EUSGUs lacks any force and effect. Therefore, under Plaintiffs' theory, EUSGUs have not been delisted and the EPA's nondiscretionary duty to promulgate standards remains intact rendering it appropriate for this court to exercise

jurisdiction to order the EPA to perform its nondiscretionary duty.

While it may be true that the EPA did not properly delist EUSGUs as a source category, it does not follow that this court may review the EPA's actions in this regard. Under Plaintiffs' theory, as a condition precedent to this court ordering the EPA to promulgate standards under 42 U.S.C. § 7412(c)(5), the court would first have to determine that the delistment of EUSGUs was invalid. In other words, Plaintiffs are asking this court to declare invalid the EPA's action delisting EUSGUs. Therefore, to grant Plaintiffs the relief they seek, the court would have to invalidate the EPA's "order" or "regulation" delisting EUSGUs, and, in the alterative, invalidate a final agency action taken by the Administrator in delisting EUSGUs, neither of which it may do.

First, 42 U.S.C. § 7607(e) provides that "[n]othing in this chapter shall be construed to authorize judicial review of regulations or orders of the Administrator under this chapter, except as provided in [42 U.S.C. § 7607]." The March 15, 2005 delistment of EUSGUs constitutes an act of rulemaking, Sierra Club v. Gorsuch, 715 F.2d 653, 656-58 (D.C. Cir. 1983),[2] which is

---

[2]Section 7412(e)(4) recognizes that the compilation of the list is subject to judicial review by the Court of Appeals. That section provides:

> Judicial review. Notwithstanding[42 U.S.C. § 7607], no action of the Administrator adding a pollutant to the list under subsection (b) or listing a source category or subcategory under subsection (c) shall be a final agency action subject to judicial review, except that any such

No. 04-694                                                        Page 10

synonymous with the promulgation of a "regulation or order," id., Ass'n of Am. R.R. v. ICC, 600 F.2d 989, 993-94 (D.C. Cir. 1979). Nor does a procedural irregularity in promulgating a regulation or order per se invalidate it.  Sugar Cane Growers Coop. of Fl. v. Veneman, 289 F.3d 89, 95 (D.C. Cir. 2002)(remanding for notice and comment rulemaking without vacating regulation), Fertilizer Inst. v. EPA, 935 F.2d 1303, 1312 (D.C. Cir. 1991) (same).  In sum, the decision to delist, and manner at which the "regulation or order" was arrived, involves inquiry into the sufficiency and propriety of a regulation or order.  Because nothing under 42 U.S.C. § 7607 allows this court to review regulations or orders, this court may not grant Plaintiffs their requested relief.

Alternatively, this court may not review a "final action" of the Administrator as that authority is exclusively vested with the Court of Appeals for the District of Columbia (with respect to national standards).  42 U.S.C. § 7607(b)(1).  The phrase "final action," "which bears the same meaning in [42 U.S.C. § 4707(b)(1)] that it does under the Administrative Procedure Act (APA) 5 U.S.C. § 704," Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 478 (2001)

---

      action may be reviewed under such section 7607 of this
      title when the Administrator issues emission standards
      for such pollutant or category.
                                                  (footnote continued)
Although Section 4212(e) does not specifically address when and where judicial review may be sought for deleting source categories, this language suggests that such a challenge is properly brought in the Court of Appeals.

No. 04-694                                                        Page 11

(citing Harrison v. PPG Indus., 446 U.S. 578, 586 (1980)), requires first that the action not be "of a merely tentative or interlocutory nature," but rather, marks "the 'consummation' of the agency's decisionmaking process," Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (quoting Chi. & S. Air Lines, Inc. v. Waterman S. S. Corp., 333 U.S. 103, 113 (1948)), and "second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Id. at 177-78 (quoting Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970)). Whether a party has properly invoked this court's jurisdiction is, of course, a judicial question. Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 478-79 (2001), Bennett v. Spear, 520 U.S. 154, 178 (1997), Marbury v. Madison, 5 U.S. (1 Cranch) 137, 174 (1803). However, at the same time, because an agency is in the best position to interpret its actions, cf. Auer v. Robbins, 519 U.S. 452, 461 (1997), and know its future intent, consideration of an agency's view is appropriate. Therefore, while a healthy respect may be given to an agency's position on whether its actions are "final," the court must ultimately satisfy for itself that the agency's actions are or are not indeed "final." Cf. Sierra Club v. Thomas, 828 F.2d 783, 793 (D.C. Cir. 1987).

In this case the EPA's actions are "final." The EPA gave notice, and the opportunity for comment, on whether it would

continue to list EUSGUs, and, if so, what standards should be promulgated relating thereto. Proposal, 65 Fed. Reg. at 79,825. The EPA's decision to delist EUSGUs followed from this notice and comment rulemaking; moreover, following the procedure set forth in the EPA's notice, nothing further remains to be done to make the EPA's decision effective. Delistment Decision, 69 Fed. Reg. at 4,668. Additionally, in its March 29, 2005 notice, the EPA stated that its actions were reviewable only in the Court of Appeals for the District of Columbia, therefore, implicitly acknowledging that its action was final. Id. Accordingly, the EPA's actions are both the consummation of the agency decisionmaking process and the determination of the obligation to promulgate standards.

The alleged questionable nature by which the EPA delisted EUSGUs does not negate the finality of the EPA's action. Although Plaintiffs are correct in that "[i]t is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking," Bennett v. Spear, 520 U.S. 154, 172 (1997), it does not follow that if an agency does choose to "ignore the required procedures of decisionmaking" its decision to do so, and any actions stemming therefrom, are not "final." While jurisdiction to determine the finality of the EPA's action clearly lies with the court and has been exercised here, any consideration of the propriety of an agency's action necessarily goes to the

No. 04-694                                                        Page 13

merits of those actions.  The merits of those actions are exclusively reserved under the CAA for the courts of appeals.

Finally, Plaintiffs argue that this court's jurisdiction to determine whether an action is in fact "final" requires the court also to invalidate final actions which are not procedurally correct.  While the Plaintiffs' premise is correct, i.e., the EPA may not escape review on the sufficiency of how it promulgates its orders and regulations, as discussed above, the CAA directs that review of the efficacy of any such action be in the courts of appeals.  This rule not only encourages the expeditious resolution of cases by avoiding duplicative review, but it also ensures that multiple actions are not simultaneously pending before multiple courts, i.e., that plaintiffs here are not challenging the improper delistment while plaintiffs before the Court of Appeals are also challenging the EPA's decision to delist source categories, thereby saving the judiciary's and parties' time and resources.  See, e.g., Ind. & Mich. Elec. Co. v. EPA, 733 F.2d 489, 490-91 (7th Cir. 1984).  If the Court of Appeals finds either that the EPA did improperly delist EUSGUs or that the EPA should not have delisted EUSGUs, the EPA's nondiscretionary duty will be reinstated making appropriate an action brought here to order the EPA to fulfill its nondiscretionary duty.

**CONCLUSION**

Because the Plaintiffs' original claim, and specifically the ability to grant Plaintiffs' their requested relief, has been mooted, the court no longer has subject matter jurisdiction over this matter. Accordingly, Defendant's motion to dismiss this action as **MOOT** is **GRANTED**. Judgement will be entered accordingly.

/S/ Donald C. Pogue
DONALD C. POGUE
UNITED STATES DISTRICT JUDGE[3]

Dated: October 27, 2005
New York, New York

---

[3] The Honorable Judge C. Pogue of the United States Court of International Trade sitting by designation.